# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KELVIN HOLMES, | ) | |
|     Plaintiff, | ) | Judge Blanche M. Manning |
| | ) | |
| v. | ) | Case No. 03 C 4772 |
| | ) | |
| COUNTY OF COOK, | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Kelvin Holmes brought suit against Cook County for alleged discrimination based on age under the Age Discrimination Employment Act; race and color under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 as well as 42 U.S.C. § 1983; and religion and sex under Title VII. Currently before the court is the defendant Cook County's ("Cook County" or "the county") motion for summary judgment seeking judgment as a matter of law as to all of Holmes' claims. For the reasons discussed below, the motion is granted.

**I.    MOTION TO STRIKE**

Holmes is proceeding pro se and received the Local Rule 56.2 notice explaining the procedures used to resolve motions for summary judgment. Cook County moves to strike portions of Holmes' response to the County's Local Rule 56.1 statement of facts on the ground that it fails to comply with the requirements of Local Rule 56.1(b). Holmes' response to the defendants' motion is comprised of three documents. The first is essentially a treatise on Title VII of the Civil Rights Act of 1964 that does not apply the facts of his case to the law. The second and third documents are his response to the county's statements of facts.[1] For each

---

[1]There are two sets of responses from Holmes because the court struck the first motion for summary judgment and associated documents as lacking in certain areas. Because the

paragraph in the statements of fact, Holmes states whether he agrees or disagrees with the statement. For those with which he disagrees, Holmes does not cite to any part of the record upon which he bases his denial, and often includes other facts (again with no citations to the record). After his response to each statement of fact, Holmes provides a statement that "I declare under penalty of perjury under the laws of the United States that the foregoing is accurate and true," and then signs and dates each statement. In addition, Holmes sometimes provides a citation to caselaw, with no particular explanation or application of the case citation to the facts at issue.

The plaintiff's failure to comply with the Local Rules is not excused by his pro se status. *See Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (holding that even though the court reads a pro se plaintiffs pleadings liberally, pro se status does not excuse a failure to comply with Local Rule 56.1). Nevertheless, because the plaintiff is proceeding pro se, the court will consider the factual assertions he makes in his response to the defendants' statement of facts but only to the extent that the plaintiff could properly testify about the matters asserted. A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed R. Evid. 602.

**II.     FACTS**[2]

---

county's second filing included additional facts, Holmes responded to those as well.

[2]The court notes that many of Holmes' responses to the county's statement of facts are out of context and discuss events and individuals that are not described fully. Given what it has to work with, this court has done its best to liberally construe pro se plaintiff Holmes' responses and properly frame his arguments.

General background

Holmes applied for employment with Cook County through the Bureau of Human Resources on April 5, 2001 in response to a posting for job title 2254, Engineering Technician II. Holmes began work at the Cook County Department of Highways on or around April 22, 2002. The Cook County Bureau of Human Resources notified Holmes by letter dated February 28, 2003, that he was required to attend the Employee Orientation Program on Thursday, March 13, 2003.[3] Holmes denies receiving this letter. Resp. at 44. The February 28, 2003 [sic], letter states that the program "provide[s] a general overview of Cook County Government and the rules and regulations that effect you as an employee."

Holmes admitted in his deposition that he received a copy of the Cook County personnel rules and regulations. However, in his response to the county's statement of facts, Holmes states that he "did receive copies of the rules and regulations but I have not received them in its entirety or as a packet."[4] A party opposing a motion for summary judgment cannot create "sham" issues of fact by filing affidavits that contradict prior deposition testimony. *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). Accordingly, the court finds that Holmes received a copy of the county's personnel rules and regulations.

---

[3]In its Rule 56.1 statement of facts, Cook County, citing to the affidavit of Mark Kilgannon, Bureau Chief of the Bureau of Human Resources, states that the date of 2003 is a typographical error and should read 2002.

[4]In response to the County's statement of fact stating that Holmes received a copy of the rulebook, Holmes states that "[a]lso I have followed county rules as a probationary employee even without a rulebook. I have filed complaints of harassment and threats of violence from co-workers that were disregarded." Holmes also states that "[m]anagement has refused to recover these records in defendants [sic] answer to discovery." It is not clear to this court whether Holmes is denying that he ever received the rulebook.

The personnel rules provide that employee behavior contrary to the rules shall be subject to disciplinary action, up to and including discharge. The rules also provide that disciplinary action for major cause infractions need not be progressive. "Major cause" includes "[s]eeking to work, reporting to work or being present on County premises, in County vehicles, or engaged in County activities while under the influence of illegal drugs, alcohol or legal drugs which adversely affect safety or job performance." Holmes states that he does agree "to these [sic] rules" but contends that he never violated them.

The county states that the Bureau of Human Resources requires all employees to comply with the Cook County Drug Free Workplace Act and requires drug testing of employees under different circumstances, including pre-employment and reasonable suspicion testing. Without pointing to anything in the record, Cook County states that Holmes received the Cook County Employee Resource Guide, the County's Drug-Free Workplace Policy, and the General Protocol for Drug Abuse Policy & Testing Procedures. Holmes denies ever having received these documents.

Holmes received a pre-employment medical examination on April 8, 2002 at the County's Medical Division, which included a drug test. On that same day, Holmes signed a form authorizing the release of any drug testing results by the Cook County Department of Human Resources to Wally Kos, Superintendent of Highways at the Cook County Highway Department.

<u>Union affiliation and procedures for promotion</u>

Holmes started work as an Engineering Technician II with the Cook County Highway Department on April 22, 2002. At the time Holmes was hired, he was represented by the International Union of Operating Engineers Local 150, AFL-CIO under the terms of the

collective bargaining agreement ("CBA") with Cook County. Holmes responds that he "disagrees" and that he was "represented by no one" but acknowledges that union dues were taken out of his paycheck. The terms of the CBA provided that Holmes was not eligible for promotion because new employees are hired under probationary status for a period of six months. Holmes states that he knew nothing of the terms of the CBA until he was terminated. Probationary employees have no seniority and may be terminated at any time during the probationary period.

Under the terms of the CBA, first preference is given in order of department seniority for any promotion or transfer. Holmes asserts (in response to statement of fact number 13) that a Highway Department vice-president, Mr. Youngblood, told him that he would be a "supervisor of the survey" and that he would train the other workers because he was experienced and work on the project was behind. Holmes also states that Youngblood "falsely gave me preference." but that Youngblood now denies that he made the aforementioned comments and has avoided talking to Holmes about an unspecified "complaint."

During Holmes' employment with the county, the Highway Department had no positions available for any promotions or transfer. Holmes, however, states that he was verbally promoted by Youngblood on April 22, 2002. During the period of Holmes' employment (April through July 2002), Holmes made no appointments for interviews for any positions within the Highway Department. Holmes contends that Youngblood told Holmes that he was a supervisor and that Youngblood did not mention anything about seniority or human resources.

<u>Requests for leave</u>

If requesting time off of work, either paid or unpaid, a county employee must contact

either his supervisor or the Highway Department's human resources' department. The county contends that during the period of his employment, Holmes made no requests for unpaid leave or for FMLA leave. The county states that Holmes never contacted the human resources department to complain about his compensation or medical or personal leave. Holmes asserts that he did request unpaid leave to attend court and when he did request time off he went through the proper channels. He also states he had "no knowledge of FMLA leave." Moreover, Holmes responds that he complained to "management," including Youngblood and Krystiniak, Supervisor of Personnel, Cook County Bureau of Administration, Department of Highways, regarding his pay (which he apparently believed should be at the level of a supervisor) and he was told they would get back to him.

June 2002 medical examination

On June 19, 2002, Holmes was taken to Mt. Sinai Hospital for emergency services because he had a headache. Holmes completed a county accident form on June 20, 2002, that alleged a work-related injury (i.e., that as he was doing surveying work, he was in the bushes and within 15-20 minutes noticed "ashy" skin on his right arm that caused itching and spread to his stomach and thighs) on June 7, 2002. In his response to the county's statement of facts, Holmes states that he walked into a field of poison ivy.

The county contends that on June 25, 2002, Holmes saw Dr. Lilla Deleon, who diagnosed a skin lesion on his right forearm and filled out a return to work certificate stating that Holmes could return to work on June 26, 2002. The county has submitted a copy of the signed return to work certificate. Holmes agrees that he was treated on June 25, 2002, but states that he never received the return to work certificate and does not remember giving it to his "job." He also

contends that he was to have a follow-up appointment on July 16, 2002, but was terminated by the county.

Holmes' performance

The county states that on June 28, 2002, Dennis Lehuta completed Holmes' two-month probationary employee performance appraisal, which indicated that Holmes exhibited poor attendance and an uncooperative attitude. The appraisal rated him unsatisfactory on a number of levels including prompt completion of work, attendance/timeliness, communication skills, judgment, ability to train, and ability to work with others. Not surprisingly, Holmes disagrees with the appraisal and contends that he trained others how to perform certain surveying functions and that he received the negative appraisal because of his "complaints."

Holmes' "reasonable suspicion" drug test

According to the county, on July 2, 2002, Kos, Superintendent of Highways at the Cook County Highway Department, received two pieces of correspondence indicating that Holmes had reported to work under the influence of drugs or alcohol. First, one of Holmes' co-workers, Karl Peterson, sent an e-mail to his supervisor, Dan Szwaya (and cc'd to "ccdhsupt," which the court assumes refers to Kos as the "Cook County Department of Highways Superintendent"), stating that he had observed Holmes barefoot, heard rambling and incoherent speech, and had suspicions that Holmes had reported for work under the influence. In his e-mail, Peterson recommended that Holmes undergo drug testing.

Second, Kos states that he received a memo from Holmes' supervisor, Szwaya. According to the memo, Szwaya saw Holmes walking erratically down the hallway. Further, Holmes had asked to speak to Szwaya, and Swzaya noticed that Holmes was glassy-eyed and

incoherent. Szwaya judged Holmes unable to work and instructed him to remain at a cubicle that day. Szwaya believed that Holmes was under the influence and communicated his concerns via the memorandum to his supervisor, Superintendent Kos.

Holmes denies that he was under the influence on July 2, 2002, and states that although he was scheduled to work in the field that day, he would not report to the field because of insults about his hospitalized mother. Holmes asserts that he went to the downtown office to speak with Youngblood and Szwaya about "harassments threats and invasion of privacy." Specifically, Holmes contends that he went to speak with Szwaya at his office about complaints Holmes had about Dennis Lehuta and Reginald Poindexter's "behavior in the field." According to Holmes, he had made these complaints previously and they were disregarded.

On the same day, July 2, 2002, Kos wrote to Kilgallon, Chief of the Bureau of Human Resources, that Holmes' supervisor noticed that Holmes had slurred speech and was not able to perform his duties. He requested that Holmes be immediately tested for drugs.

On July 2, Holmes reported to the County Medical Division for testing. Holmes states that he was told that he was being sent to the medical offices to be evaluated for poison ivy. According to Holmes, the test was "bogus and fraudulent" and the person who administered the test was a blatant racist. Holmes states that as he waited to be tested, he was insulted by the screening office when they accused him in front of others of "shooting dope" and having AIDS, and ignored "small black children in the [waiting] area that starred [sic] at" him.

Holmes also states that other "officers" told him to "be cool" and take the drug test. Holmes states that he mentioned the poison ivy and that although they told him he would be evaluated for that after the drug test, no poison ivy evaluation was ever done. Holmes signed a

form at the time of the drug test, July 2, 2002, certifying that he had provided a urine specimen to the technician.

Helene Maignon was the director of Cook County's Drug and Alcohol Testing from 1986 to 2001, when she retired. In 2001, she was named acting director and accepted a consulting role. Maignon states that the Bureau of Human Resources requires all employees to comply with the Cook County Drug-Free Workplace Act, which prohibits possession or use of a controlled substance in the workplace and provides that violation of this policy will result in discipline up to and including discharge. Moreover, the Act requires drug testing of employees under different circumstances, including pre-employment testing and reasonable suspicion testing.[5]

The protocol provides that if the initial drug test screening, performed in the medical unit with Enzyme Multiple Immunoassay Testing (EMIT) system, indicates a positive test result, the same specimen is sent to a federally recognized drug laboratory to be retested and confirmed by GC/MS (Gas Chromatherapy/Mass Spectometry). The results are then reported and a certified copy of the results is sent to the Cook County Human Resources Employee's Drug Testing Director by the Medical Review Officer (MRO), a licensed physician who has knowledge of substance disorders. The Director of Drug Testing then reports the findings to the appropriate department head.

In this case, Maignon submitted Holmes' test sample specimen to Quest Diagnostics after the initial test indicated a positive result for two illegal substances. Quest screened the specimen and confirmed positive results for cocaine metabolites and morphine. The results were contained

---

[5]Maignon's affidavit cites to the General Protocol, Drug Abuse & Testing Procedures for Cook County Bureau of Human Resources ("protocol"). While the county asserts that every employee receives a copy of the protocol, Holmes claims he never received it.

in a report dated July 6, 2002. According to the county, any employee may request a retest of his specimen within 72 hours of being informed of a positive result, but Holmes never requested a retest. Holmes claims that he did not know he could seek a retest and was not given a "receipt" showing a positive result.

On July 8, 2002, Maignon wrote to Superintendent Kos telling him that the drug test was positive and that the alcohol test was negative. In response to these statements of facts by the county, Holmes states that they are "irrelevant" and that it was "all conjoured [sic] up on a conspiracy of racism which is ungodly and devilhearted."

Holmes disagrees with the test results and asserts that the testing in his case was conducted "differently" than in other cases. According to Holmes, he was on only prescribed medication and the "staff" conspired to tamper with the results for a positive result for illegal and controlled substances. He also asserts that he has never even heard of morphine being used on the streets of Chicago. Holmes agrees that the use of controlled substances in the workplace is prohibited but contends that he was "tricked" into providing the urine sample because he thought he was going for a "poison ivy evaluation" and not a drug screen.

Holmes' dismissal

On July 9, 2002, Holmes was advised that the drug test was positive and was informed of his dismissal from employment. According to the county, Holmes became quite agitated and was arrested and taken away from the county's offices in handcuffs by the Chicago Police Department. Holmes states that he began to walk away voluntarily but that he was insulted and yelled at by other employees as he left the building and that he was shoved by one of the officers (Holmes appears to be referring to the security officers who were initially escorting him out of

the building). Holmes states that the Chicago police officers then arrived and he was handcuffed and taken to jail for 14 hours.[6]

Holmes filed a charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination based on race on December 20, 2002. The EEOC issued a dismissal and a right to sue letter on April 15, 2003. Holmes filed his initial complaint on July 10, 2003, and ultimately filed a second amended complaint on November 10, 2003.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuinely disputed issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting Rule 56). When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *See, e.g., Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). A triable fact issue exists "only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Schuster*, 327 F.3d at 573 *(quoting Wade v. Lerner New York, Inc.*, 243 F.3d 319, 321 (7 th Cir. 2001) (quotation omitted)).

---

[6]Holmes also states that before he was taken away, he told "the public" about "everything the county had done to [him]." Holmes contends that he believes these statements were the basis of a later charge by the county that he had made a bomb threat and that on August 12, 2002, the "unknown" case was thrown out. Holmes later states that after he was arrested, he was never charged and not told the reasons for his arrest. Holmes states that at his court date on August 12, 2002, no county officials showed up and the case was dismissed. It is the court's understanding that these alleged events have nothing to do with the instant employment discrimination case so it will disregard them in connection with the current motion.

The movant bears the initial burden of establishing that there is no genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims," the non-movant must then present specific facts showing that there is an issue for trial. *Michael v. St. Joseph County, et al.*, 259 F.3d 842, 845 (7th Cir. 2001) (quoting Fed.R.Civ.P. 56(e)). To successfully oppose the motion, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue. *Celotex*, 477 U.S. at 324. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV. ANALYSIS

### A. *Holmes' claims of discrimination based on color, sex, religion, and age are outside the scope of the charge and are therefore dismissed.*

In his second amended complaint, Holmes checks the boxes indicating that he alleges that he was discriminated against based on his color, sex, religion, and age, in addition to race discrimination. "[T]he scope of a federal employment complaint is limited by the scope of the plaintiff's EEOC charge." *Hillmann v. City of Chicago*, 04 C 6671, 2005 WL 1766367, at *2 (N.D. Ill. July 20, 2005) (*citing Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989)). *See also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (before proceeding with "an ADEA claim in federal court, a plaintiff must first have raised it in a timely EEOC charge."). A plaintiff "may not complain to the EEOC of only certain instances of

discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The Seventh Circuit has stated:

> In determining whether [plaintiff's] current allegations fall within the scope of the earlier charges, we look to whether the allegations are like or reasonably related to those contained in the EEOC complaint. If they are, then we ask whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it. Claims are reasonably related if there is a factual relationship between them. At a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals.

*Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (internal citations omitted).

Here, Holmes' EEOC charge indicates only that he was discriminated against based on his race. Holmes make no mention of discrimination in any way based on sex, religion, or age. As such, the court finds that these claims are dismissed as outside the scope of the EEOC charge. As to color, the court notes that the terms color and race are often used in conjunction. *See e.g., Oranika v. City of Chicago*, No. 04 C 8113, 2005 WL 2663562 (N.D. Ill. Oct. 17, 2005) (discussion whether claim for race and color discrimination is within the scope of a national origin claim in EEOC charge). Indeed, it appears that at one point in time, the relevant box on an EEOC charge included race and color together as one basis for alleged discrimination. *Jenkins v. Blue Cross Mut. Hosp. Ins. Co.*, 538 F.2d 164, 168 (7th Cir. 1976) ("In the present case the plaintiff checked the EEOC form box stating that the 'discrimination (was) because of . . . Race or Color.'"). Accordingly, in this instance when the plaintiff is proceeding pro se and the allegations in the complaint do not make it clear whether Holmes is claiming discrimination based on color (but it is plausible that he is), the court assumes that the allegation of color discrimination is like or reasonably related to the claim for race discrimination and thus is not outside the scope of the EEOC charge.

B.     *Race and Color Discrimination*[7]

Holmes claims he was terminated because of his race and color.  A plaintiff seeking relief under Title VII can prove discrimination using the "direct" method or the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060- 1061 (7th Cir. 2003). The same standards apply to discrimination claims brought under § 1981 and § 1983.  *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003); *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998).

Under the direct method, there are two types of permissible evidence: direct evidence and circumstantial evidence.  *Ineichen v. Ameritech*, 410 F.3d 956, 962 (7th Cir. 2005).   Under the direct method, a plaintiff must point to "enough evidence, whether direct, or more commonly . . . circumstantial, to create a triable issue of whether the adverse employment action of which he complains had a discriminatory motivation – whether he was fired, or denied a promotion, or not hired, or paid less, because of the racial or other protected group to which he belongs." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997) (citation omitted).  "Direct evidence is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997) (internal citation and quotation marks omitted).

Direct evidence claims are rare because they essentially require the decision-maker to admit that she acted based upon the prohibited animus. *Cerutti*, 349 F.3d at 1061.  A plaintiff can

---

[7]To the extent that future references in this memorandum and order are only to race discrimination, they are also deemed to incorporate discrimination based on color.

also prevail under the direct method by constructing a "convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Id*. (internal quotations and citations omitted). That circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Because Holmes offers no direct evidence of discrimination, the court turns to the indirect method.

In order to establish a prima facie case of race discrimination using the indirect method, plaintiff must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the class were treated more favorably. *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). If the plaintiff sets forth a prima facie case of discrimination, the defendant must then set forth a legitimate, non-discriminatory reason for its action. *Id*. Assuming the defendant has set forth a legitimate, non-discriminatory reason, the plaintiff has the burden to show that the defendant's articulated reasons were actually a pretext for discrimination. *Id*. Pretext requires more than showing that the decision was "mistaken, ill considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown." *Id.* (citation omitted).

While Holmes is a member of a protected class and suffered an adverse employment action when he was terminated, Holmes' prima facie case fails on the last prong. Holmes does not provide this court with any evidence of a similarly-situated employee who was treated more favorably than he was. To establish that another employee is similarly-situated, Holmes must show that there is someone who is directly comparable to him in all material respects. *See*

*Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002). To determine whether employees are directly comparable, the court looks to relevant factors, including whether the employee: (1) held the same or similar job; (2) was subject to the same standards; (3) was supervised by the same person; and (4) had comparable experience, education, and other qualifications. *See Ajayi v. Aramark Bus. Serv., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Holmes has not provided any information of evidentiary quality, *i.e.,* depositions, answers to interrogatories, admissions on file, or affidavits, that fulfill these criteria. *See Celotex Corp.*, 477 U.S. at 322. As such, Holmes has not established that one of his coworkers was similarly situated in the first instance, let alone that a similarly-situated employee was treated more favorably than him. Because Holmes has failed to establish a prima facie case of race discrimination, the court grants Cook County's motion for summary judgment as to this claim on this basis alone.

Even if Holmes had stated a prima facie case under the indirect method, Holmes has failed to point to any evidence demonstrating that the county's reason for firing him (i.e., that he had violated county rules and regulations by reporting for work under the influence of drugs) was pretextual. Thus, the county is properly granted summary judgment as to the termination claim.[8]

---

[8]Holmes also alleges that he was harassed by his co-workers, and it can be interpreted from at least one of his statements that he believes the harassment was racially based. The county has not moved for summary judgment on a claim for race harassment. Nevertheless, the court finds that Holmes could not have succeeded on such a claim. To survive summary judgment on a hostile work environment claim, Holmes is required to establish that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his race, (3) the harassment was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). Holmes has failed to point to any record evidence in support of his claim of harassment, and thus has not adequately demonstrated that the alleged harassment was racially based or was severe enough to alter the conditions of his

C.    *Retaliation*

Although the county moves for summary judgment with respect to a retaliation claim by Holmes, the court does not read Holmes's amended complaint or his EEOC charge to include a claim for retaliation. However, in his response to the county's statement of fact, Holmes contends that the drug test was a "retaliation against me for filing complaints against white employees and or a white favored black employee (discredit and enemy to myself and the society of Americans of the black race.)." Construing this statement along with Holmes' other statements in his EEOC charge and his responses to the county's statement of fact, the court understands Holmes' claim to be that he was ultimately wrongfully terminated because he had made complaints to management about alleged harassment by other employees.[9]

To establish a prima facie case of retaliation under the indirect method, Holmes must put forth evidence demonstrating that he: (1) engaged in statutorily protected activity; (2) was meeting his employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in protected activity. *Griffen v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004) (*citing Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003)). The burden then shifts to the employer to

---

environment. Moreover, "[t]he record is devoid of any indication that [the county's] employment decisions were 'inherently racial,' that they evidenced 'negative attitudes toward African-Americans,' or that they had 'racial ·· overtones.'" *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) (citations omitted). Accordingly, the court finds that even if Holmes were making a claim of race harassment, it would fail.

[9]The court further notes that the requirement that an employee submit to a drug test is not an adverse action. *Hicks v. Sheahan*, No. 03 C 0327, 2004 WL 3119016, at *20 (N.D. Ill. Dec. 20, 2004) ("Making Hicks take two drug tests as part of DOC's policy of random drug testing cannot be construed as 'adverse' in any event.").

present evidence of a non-invidious reason for the employment action at issue. *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005). If the employer satisfies its burden, the burden shifts back to the plaintiff to show that the reason provided by the employer for the employment action is pretextual. *Id.*

As with the discrimination claim, Holmes' retaliation claim fails because he has not established that one of his co-workers was similarly situated, and even if he had, he has not shown that the similarly-situated employee was treated more favorably than him. As such, his retaliation claim fails and Cook County is granted judgment as a matter of law. Moreover, Holmes has failed to point to any evidence that he was terminated for having complained about alleged harassment rather than his having tested positive for drugs while on the job. Accordingly, the court grants summary judgment to the county regarding the retaliation claim.

A. *Failure to Promote*

Holmes also claims in his second amended complaint that he was not promoted. Specifically, he alleges that his supervisor verbally promoted him on his first day, but that the Highway Department never officially or formally promoted him, and thus, he was denied certain pay increases. Again, Holmes has not put forward any evidence under the direct method that his failure to promote was based on race. In order to establish a prima facie case of race discrimination based on an alleged failure to promote under the indirect method, Holmes would need to establish, by a preponderance of the evidence, that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he was rejected for the position sought; and (4) the position was granted to a person outside the protected class who is similarly or less qualified than Holmes. *Dandy v. UPS, Inc.*, 388 F.3d 263, 273 (7th Cir. 2004).

Page 18

Again, as with Holmes' other two claims, he fails to establish the fourth prong of the prima facie test for a failure to promote, that is, that the position was granted to a person outside the protected class who is similarly or less qualified than him. He also has failed to show that he was qualified for the position sought. Accordingly, Cook County's motion for summary judgment is granted as to this claim.

## D. CONCLUSION

For the reasons stated above, the county's motion for summary judgment [78-1] is granted.

**ENTER:**  *Blanche M. Manning*
**Blanche M. Manning**
**United States District Judge**

**DATE:** January 24, 2006